[No. 4771.]

The El Paso Gold Mining Company v. Ewing.

**Master and Servant—Injury to Servant—Contributory Negligence.**
Where the orders and instructions of a mining company required its employees, except those about to fire shots, to leave their places of work at ten minutes before noon, and to reach the shaft by noon, an employee, knowing of such instructions and of the custom of firing shots immediately after such time, and knowing of the place where such shots were being fired, who negligently failed to obey such instructions and was injured by a shot fired from three to five minutes after noon at such place, is guilty of contributory negligence and cannot recover damages for injuries so received.—P. 515.

*Appeal from the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Action by Finis L. Ewing against The El Paso Gold Mining Company. From a judgment for plaintiff, defendant appeals.                    *Reversed.*

Messrs. Wolcott, Vaile & Waterman and Mr. T. J. Leftwich (Mr. Wm. W. Field, of counsel), for appellant.

33

Mr. Justice Maxwell delivered the opinion of the court:

This was an action brought by appellee to recover damages for personal injuries sustained by reason of the alleged negligence of appellant.

The complaint stated two causes of action.

The jury found for the appellant upon the first cause of action. The allegations contained in the second cause of action, upon which the judgment rests, were, in substance: That, at the time mentioned in the complaint, defendant was the owner of, and engaged in mining and operating the El Paso mine in the Cripple Creek mining district; that at and prior to April 8, 1902, there was in the mine a level known as the second level, connecting the main working shaft of the mine with a stope at the end of said level, about 500 feet distant from the shaft; that the defendant was engaged in blasting in said second level at a point about midway between the stope and shaft; that the blasts were always fired at the noon hour, and all employees working in the mine, or on said level, were required, by the instructions of defendant, to leave their work in the stope and level, and go to the surface, just prior to the hour of noon on each day, in order that the blasts might be fired without danger of injury to anyone; that at and prior to April 8, 1902, plaintiff was working pursuant to instructions of defendant in the stope on the second level, and a few minutes prior to the noon hour of that day, plaintiff started to quit work in said stope and started to pass along the second level, for the purpose of being hoisted to the surface, as it was his duty to do, in accordance with the instructions and custom of the defendant, in order to leave said level vacant and free while the blasts were fired at the noon hour; that one Hamilton, an employee of defendant, was charged with the duty of "spitting"

the fuse and firing the shot in connection with the blasting which was being done by the defendant in the second level of the mine, and that it was the duty of Hamilton, before "spitting" the fuse and firing the shots, always to give notice to the other employees of defendant at work in said stope and level that shots were about to be fired, and to see that all other employees of defendant had left the stope and level before "spitting" the fuse and firing the shots; that on said day said Hamilton negligently failed to notify the plaintiff before "spitting" the fuse and firing the shots on that occasion, and carelessly and negligently "spit" the fuse at a point in said level between the shaft and the stope while the plaintiff was still at work in the stope; and while plaintiff was proceeding along the level toward the shaft a few minutes prior to noon of that day, for the purpose of getting out of the mine before the blasts were fired, plaintiff was, through the carelessness and negligence of Hamilton, allowed to pass along the level, and while so passing the charge of giant powder or other explosive material exploded, and plaintiff was injured thereby.

The defenses to this cause of action were: a general denial, contributory negligence, assumption of risk, and that the negligent acts, if any, complained of, were the acts of a fellow-servant or fellow-servants.

Passing the question of the sufficiency of the complaint raised by a general demurrer, and insisted upon here, this decision will be founded upon the evidence adduced at the trial.

Upon the decisive point in this case, in substance, the testimony of plaintiff was, that at noon of the day of the accident he was working in the stope above the second level, about 500 feet from the shaft; that at a point about 250 feet from the shaft on the

same level Hamilton was starting a cross-cut drift; that Hamilton had been working at that point several days; that plaintiff knew the point at which Hamilton was working, having passed there several times; that he knew that Hamilton, acting pursuant to the orders and instructions of the company, fired his shots at 12 m. or "tally"; that the orders and instructions of the company required the employees of the mine, except those about to fire shots, to leave their places of work at 10 minutes before noon or "tally," and repair to the shaft, which they were required to reach by noon or "tally"; that the orders of the company were, that the shots should be fired by noon; that "just about noon" of that day he started out of the stope in which he was working, came down to the second level and started towards the shaft; that just as he was leaving the stope he heard a shot fired; that he did not know who fired it; that the machinery had stopped at that time, meaning the machinery which operated the air-drills which were in use at the mine; that the machinery stopped at 12 o'clock; that when he came to a switch in the level, which was 60 to 75 feet distant from the place where Hamilton was working, he looked ahead to see where Hamilton was; that the level was practically straight from the switch, where he was, to the cross-cut drift in which Hamilton was working; that he did not see Hamilton, although if Hamilton had been at or in the cross-cut he could and would have seen Hamilton's light; that he knew it was Hamilton's custom to "spit" or light his fuse and immediately go to the shaft; that he knew that the shooting would occur at the cross-cut at noon; that he knew that Hamilton, after "spitting" his fuse, would leave that point and go toward the shaft; that he knew that Hamilton had left that point and gone toward the shaft; that he was in a hurry and was walking right

on; that he was walking fast with his eyes on the ground; that after leaving the switch he did not look for Hamilton again; that he walked on fast and knew nothing more.

Plaintiff had no means of determining the time at which he left the stope and started toward the shaft.

No witness for plaintiff attempted to more definitely fix the time when Hamilton's shot was exploded than plaintiff had done.

Fitemaster, one of plaintiff's witnesses, with whom plaintiff was working in the stope, and who followed plaintiff along the level, at a distance of about 50 feet, and assisted him to the shaft after the accident, testified, that his departure from the stope had been delayed beyond the usual and ordinary hour of departure, by some trouble he had had in starting a hole, and that several shots had been fired in the mine before he left the stope.

The uncontradicted testimony of three witnesses of defendant, including Hamilton, was that Hamilton's shot exploded from three to five minutes after 12. It was also developed by the testimony of two witnesses for defendant that the shot which plaintiff heard just as he was leaving the stope was "spitted" or lighted at two minutes after 12.

Thus it appears that the injuries sustained by plaintiff were directly and proximately due: (1) to his own negligence and heedlessness, and (2) to his disobedience of the orders and instructions of his employer.

Plaintiff, by his own testimony, brought himself within the rule of contributory negligence which precluded a recovery in this case.

It was the duty of the court to have directed a verdict for defendant upon the request made therefor, at the close of the testimony.

*Union Coal Co. v. Sundberg,* and cases there cited, decided at the January term of this court.

There is no evidence in the record tending to show that any duty rested upon Hamilton, or any other person, to give plaintiff warning that shots were about to be fired. In fact, the testimony of plaintiff conclusively shows that no duty of warning rested upon any one; the rules of the company, its orders and instructions to its employees, that they should leave their places of work in the mine in time to be at the shaft at 12 m. or "tally," expressly negatives the idea that specific warning was required or intended to be given. The rules and instructions were themselves the warning. Of these plaintiff had knowledge. He disobeyed them. Injury followed such disobedience, and he must suffer the consequences.

The judgment will be reversed.        *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE GUNTER concurring.